UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CAROL KULIG
on behalf of herself and all others similarly situated,

                 Civil Action No. 13-cv-4715

        Plaintiff,

   -v-

MIDLAND FUNDING, LLC,
MIDLAND CREDIT MANAGEMENT, INC.,
ENCORE CAPITAL GROUP, INC.
formerly MCM CAPITAL GROUP, INC.,
AMANDA PEREZ,

        Defendants.
-------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND TO ALTER ORDER PURSUANT TO FED. R. CIV. P. 23(c)(1)(C)

TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I. THE STANDARDS FOR A MOTION FOR RECONSIDERATION AND FOR AMENDMENT OF A CLASS CERTIFICATION ORDER UNDER RULE 23 ............ 2

    A. The strict standards for a motion for reconsideration and amendment .................. 2

    B. It is Plaintiff's burden to demonstrate adequacy under Rule 23(a)(4) and (g) ......................................................................................................................... 4

II. PLAINTIFF'S MOTION IS PROCEDURALLY FORECLOSED ................................ 5

    A. Neither Local Civil Rule 6.3 nor Rule 23(c)(1)(C) permit reconsideration or amendment based on facts previously available to the moving party ............... 5

    B. There are no new facts or changed circumstances here ........................................ 6

III. PLAINTIFF FAILS TO CONTEST THE MAJORITY OF THE FINDINGS ON WHICH THE COURT FOUND HER ATTORNEYS TO BE INADEQUATE ............. 8

    A. Plaintiff's attorneys made an unauthorized classwide settlement offer, which renders them inadequate ............................................................................ 9

    B. Plaintiff's attorneys admit that they failed to convey Midland's classwide settlement counteroffer, which renders them inadequate ................................... 11

    C. The terms of the retainer agreement are improper, and the belated "addendum" to that retainer agreement is no cure ............................................. 13

    D. Plaintiff's attorneys' attempted explanation of the challenged conduct in the *Mayorga* case misses the point ..................................................................... 16

IV. PLAINTIFF HAS NOT CARRIED HER BURDEN TO DEMONSTRATE THAT THE $20,000 INDIVIDUAL SETTLEMENT OFFER WAS COMMUNICATED ....... 17

V. THERE ARE SUBSTANTIAL ADDITIONAL GROUNDS PREVENTING A FINDING OF ADEQUACY .......................................................................................... 20

CONCLUSION ................................................................................................................. 21

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
   04 Civ. 3531, 2014 U.S. Dist. LEXIS 63605 (S.D.N.Y. May 7, 2014) ....................................5

*Allen v. Antal*,
   No. 12-cv-8024, 2014 WL 2526913 (S.D.N.Y. June 3, 2014) ..................................................2

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) .........................................................................................14

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) .............................................................................................4, 18

*Byes v. Telecheck Recovery Servs.*,
   173 F.R.D. 421 (E.D. La. 1997) ......................................................................................11, 12

*Colodney v. Continuum Health Partners, Inc.*,
   No. 03 Civ 7276, 2004 WL 1857568 (S.D.N.Y. Aug. 18, 2004) .............................................3

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) .............................................................................................17

*Deadwyler v. Volkswagen of America, Inc.*,
   134 F.R.D. 128 (W.D.N.C. 1991) ......................................................................................9, 11

*Fleischman v. Albany Med. Ctr.*,
   No. 06cv0765, 2010 U.S. Dist. LEXIS 23727 (N.D.N.Y Feb. 13, 2010), *aff'd* 639
   F.3d 28 (2d Cir. 2011) ......................................................................................................6, 7

*Forman v. Mt. Sinai Medical Center*,
   128 F.R.D. 591 (S.D.N.Y. 1989) ...........................................................................................9

*Friend v. Hertz Corp.*,
   No. C-07-5222, 2014 U.S. Dist. LEXIS 126161 (N.D. Cal. Sept. 8, 2014) ...........................4

*Gair v. Peck*,
   6 N.Y.2d 97 (1959) ...........................................................................................................16

*General Telephone Co. v. Falcon*,
   457 U.S. 147 (1982) ..........................................................................................................3, 4

*In re Fed. Home Loan Mortg. Corp. Sec. Litig.*,
   No. 09Civ.832, 2012 U.S. Dist. LEXIS 138638 (S.D.N.Y. Sept. 25, 2012) ...........................5

*In re FleetBoston Fin. Corp. Sec. Litig.*,
   No. 02-4561, 2007 U.S. Dist. LEXIS 87425 (D.N.J. Nov. 28, 2007) ....................................3, 4

*In re J.P. Morgan Chase Cash Balance Litig.*,
   255 F.R.D. 130 (S.D.N.Y. 2009) ....................................................................................................3

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ..................................................................................................10

*Jermyn v. Best Buy Stores, L.P.*,
   276 F.R.D. 167 (S.D.N.Y. 2011) ....................................................................................................4

*Kingvision Pay-Per-View v. Lujo's Latinos Bar & Rest., Inc.*,
   No. 05 CV 10202, 2007 U.S. Dist. LEXIS 66588 (S.D.N.Y. Aug. 28, 2007).........................20

*Koehler v. Bank of Bermuda, Ltd.*,
   No. M18-302, 2005 WL 1119371, 1 (S.D.N.Y. May 10, 2005).................................................3

*Lexington Ins. Co. v. Swanson*,
   No. C05-1614P, 2007 U.S. Dist. LEXIS 31881 (W.D. Wash. May 1, 2007).........................14

*Marrero Pichardo v. Ashcroft*,
   374 F.3d 46 (2d Cir. 2004) ............................................................................................................3

*Mayorga v. First Resolution Investment Corporation*,
   12-cv-587 (DLI) (VVP) (E.D.N.Y.) ......................................................................................16, 17

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995).....................................................................................................11, 21

*McNamara v. Felderhof*,
   410 F.3d 277 (5th Cir. 2005) .........................................................................................................7

*New York City Dist. Council of Carpenters Pension Fund v. FPC Contr. & Dev. Corp.*,
   No. 03Civ.3578, 2006 U.S. Dist. LEXIS 4928 (S.D.N.Y. Feb. 3, 2006) ...............................20

*Okyere v. Palisades Collection, LLC*,
   300 F.R.D. 149 (S.D.N.Y. 2014) ..................................................................................................12

*Pannonia Farms, Inc. v. USA Cable*,
   No. 03Civ.7841 (NRB), 2004 WL 1794504 (S.D.N.Y. Aug. 10, 2004) ...................................3

*Perez v. Progenics Pharms., Inc.*,
   No. 10-CV-8278, 2014 U.S. Dist. LEXIS 125004 (S.D.N.Y. Sept. 8, 2014)...........................5

*Rafter v. Liddle*,
   288 F. App'x 768 (2d Cir. 2008) ...................................................................................................5

*Shrader v. CSX Transp., Inc.,*
    70 F.3d 255 (2d Cir. 1995)......................................................................................3

*System Management Arts, Inc. v. Avesta Technologies, Inc.,*
    106 F. Supp. 2d 519 (S.D.N.Y. 2000)......................................................................7

*Travel Arrangers, Inc. v. Western Airlines,*
    623 F.2d 1255 (8th Cir. 1980) ...............................................................................16

*United States ex rel. Taxpayers Against Fraud v. GE,*
    41 F.3d 1032 (6th Cir. 1994) .................................................................................16

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)............................................................................................4

*Young v. Beard,*
    No. 2:11-cv-02491, 2014 U.S. Dist. LEXIS 2216 (E.D. Cal. Jan. 7, 2014) .............6

*Zito v. Harding,*
    975 N.Y.S.2d 2 (1st Dep't 2013) ...........................................................................12

**STATUTES**

28 U.S.C. § 1927 .......................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................... *passim*

Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 4:38 (10th ed. 2013) ....................14

New York Rule of Professional Conduct 1.4(a)(1)(iii) ..........................................8, 12

New York Rule of Professional Conduct 1.4(a)(3) ....................................................21

New York Rule of Professional Conduct Rule 1.5.....................................................16

Defendants, Midland Funding, LLC, Midland Credit Management, Inc., Encore Capital Group, Inc., and Amanda Perez, Esq. (collectively, "Midland"), submit this memorandum of law in opposition to Plaintiff's Motion for Reconsideration and to Alter Order Pursuant to Fed. R. Civ. P. 23(c)(1)(C).

## INTRODUCTION

This motion is based on an oversimplification and misunderstanding of the nature of the Court's Memorandum and Order denying class certification, since it *concedes* the majority of the factual findings that were made by the Court in assessing proposed class counsels' adequacy. The Court's review of the record, which revealed multiple, distinct findings of misconduct, led it to reach the overall conclusion that Plaintiffs' attorneys were inadequate. Yet, Plaintiff's attorneys factually dispute *only one* of those issues -- their failure to convey Midland's $20,000 individual settlement offer. Indeed, the premise of Plaintiff's motion appears to be that their failure to communicate the $20,000 offer is the only issue that prevented a finding of adequacy. While, for the reasons detailed below, Plaintiff's attempted "factual" dispute of that particular finding is itself altogether unconvincing, that premise is false.

In addition to Plaintiff's attorneys' failure to communicate the $20,000 settlement offer, the Court identified four other findings that precluded proposed class counsel's adequacy: (1) Plaintiff's attorneys' making a $900,000 classwide settlement offer to Midland without Plaintiff's knowledge; (2) Plaintiff's attorneys' failure to convey to Plaintiff Midland's classwide settlement counteroffer; (3) the improper terms of the retainer agreement signed by Plaintiff's attorneys and Plaintiff, which were designed to coerce Plaintiff into rejecting any individual settlement offer; and (4) the recent conduct of Mr. Keshavarz in another putative class action.

At a minimum, Plaintiff's attorneys admit that they made a classwide settlement offer without Plaintiff's knowledge and never conveyed to Plaintiff Midland's classwide offer in

response.  They also do not contest the Court's finding that their retainer agreement with Plaintiff contained improper language intended to prevent any individual settlement.  The conduct of Mr. Keshavarz in the other recent class action also speaks for itself, and it stands as proof of these attorneys' determination to exclude their client from the settlement dialogue.  Each of these issues alone, and most certainly when viewed cumulatively, preclude a finding of adequacy.

Against this background, this motion is both procedurally and substantively deficient. Procedurally, neither Local Civil Rule 6.3 (Motions for Reconsideration or Reargument) nor Rule 23(c)(1)(C) can afford Plaintiff relief, as the motion is predicated entirely upon Plaintiff's attorneys' efforts to supplement and recast the record on certain factual matters that remain unchanged and that were fully known to Plaintiff at the time the parties briefed the certification motion.  Thus, the Court's analysis should end there.  Substantively, the motion fails to dispute most of the findings made by the Court, and the remaining arguments made by Plaintiff's attorneys are meritless and do not warrant reversal of the Court's decision.

<u>**ARGUMENT**</u>

## I.    THE STANDARDS FOR A MOTION FOR RECONSIDERATION AND FOR AMENDMENT OF A CLASS CERTIFICATION ORDER UNDER RULE 23.

Plaintiff spends scant space within her brief describing the standards for the relief that she seeks because those standards are harmful to her motion.  The applicable standards, discussed below, establish strict procedural and substantive hurdles that Plaintiff cannot overcome.

### A.    The strict standards for a motion for reconsideration and amendment.

Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Allen v. Antal*, No. 12-cv-8024, 2014 WL 2526913, at \*3 (S.D.N.Y. June 3, 2014).  "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its

decision." *Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004) (internal quotation marks and citation omitted).

As the Second Circuit has held, the standard for granting such relief is "strict." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). Such a motion "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is not an opportunity to take "a 'second bite at the apple' for a party dissatisfied with a court's ruling." *Pannonia Farms, Inc. v. USA Cable*, No. 03Civ.7841 (NRB), 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004). Therefore, "a motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion." *Koehler v. Bank of Bermuda, Ltd.*, No. M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005). In fact, in recognition of these restrictive principles, Local Civil Rule 6.3 states that "[n]o affidavits shall be filed by any party unless directed by the Court."

The purpose of Rule 23(c)(1)(C) is to afford courts the ability to amend an existing class certification order, or an order denying certification, in light of new developments (*e.g.*, new facts or an intervening change in the law). *See General Telephone Co. v. Falcon*, 457 U.S. 147, 160 n.16 (1982). "As the Notes of Advisory Committee clarify, the goal of Rule 23(c)(1)(C) is to allow the court to make a determination whether the previous class certification should be altered or amended in view of development of the facts that might render the original determination unsound." *In re FleetBoston Fin. Corp. Sec. Litig.*, No. 02-4561, 2007 U.S. Dist. LEXIS 87425, at *15 (D.N.J. Nov. 28, 2007) (quoting Notes of Advisory Comm., Subdivision (c)(1) (1966)). "There must be some development or change in circumstances to merit revisiting a class certification decision" under Rule 23(c)(1)(C). *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009). A "court may not disturb its prior findings absent

some significant intervening event, or a showing of compelling reasons to reexamine the question." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011).

As such, "a court presented with a Rule 23(c)(1)(C) motion is obliged to take cognizance of a changed factual situation, *i.e.*, to make a comparison between the factual circumstances existing at the time of original certification and those existing at the time of the motion." *In re FleetBoston Fin. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 87425, at *16. In the absence of new factual or legal developments, however, a court "has little reason to revisit the issue of the propriety of its original [certification] determination." *Friend v. Hertz Corp.*, No. C-07-5222, 2014 U.S. Dist. LEXIS 126161, at *9-10 (N.D. Cal. Sept. 8, 2014).

**B.    It is Plaintiff's burden to demonstrate adequacy under Rule 23(a)(4) and (g).**

Regardless of the procedural vehicle by which the Court addresses Plaintiff's motion, Plaintiff bears the ultimate burden of proof on all issues relating to certification. In case after case, courts have stressed that it is not the defendant who bears the burden of showing that the proposed class *does not* comply with Rule 23, but it is the plaintiff who bears the burden of showing that the proposed class *does* comply with Rule 23. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). A plaintiff must prove every element of Rule 23(a) and one of three subparts of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). And, the burden is entirely on the plaintiff to prove each element of Rule 23 by "at least a preponderance of the evidence." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Therefore, even if Plaintiff could satisfy the procedural standards for review under Local Civil Rule 6.3 or Rule 23(c)(1)(C), (which she cannot), since the motion does nothing more than attempt to contradict Plaintiff's prior testimony and her attorneys' admissions on some (but certainly not all) of the findings made by the Court, Plaintiff's motion necessarily fails under Rule 23(a)(4) and (g).

## II.   PLAINTIFF'S MOTION IS PROCEDURALLY FORECLOSED.

Regardless of the fact that Plaintiff's attorneys concede the majority of the bases on which the Court found them inadequate, and ignoring (for now) the nature of their opposition to the limited facts they do contest, the motion is procedurally defective, as is it based on facts that were available to Plaintiff at the time that she moved for class certification.

### A.   Neither Local Civil Rule 6.3 nor Rule 23(c)(1)(C) permit reconsideration or amendment based on facts previously available to the moving party.

As noted by the Court in its October 6, 2014 Order, reconsideration under Local Civil Rule 6.3 "is not an opportunity to bring to the Court's attention factual information that was available at the time [of] a party's submission but was not included in that submission." (Dkt. No. 109); *see also Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (on a motion for reconsideration, the court should "not consider facts not in the record to be facts that the court overlooked"). Nor is it a vehicle to advance new arguments. *See, e.g., Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 04cv3531, 2014 U.S. Dist. LEXIS 63605, at *4-8 (S.D.N.Y. May 7, 2014) ("As a motion for reconsideration or clarification, plaintiff's motion is procedurally defective . . . . [P]laintiff is now making a new argument and seeking new relief that it could have (and should have) sought in response to defendants' motion to strike . . . ."); *Perez v. Progenics Pharms., Inc.*, No. 10-CV-8278, 2014 U.S. Dist. LEXIS 125004, at *8 (S.D.N.Y. Sept. 8, 2014) ("[A] motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue.").

Likewise, as courts within this circuit and district (as elsewhere) have consistently held, relief under Rule 23(c)(1)(C) is unavailable when the proffered factual bases and any related arguments for altering the court's certification order were available to the movant at the time that class certification was being briefed. *See, e.g., In re Fed. Home Loan Mortg. Corp. Sec. Litig.*, No. 09Civ.832, 2012 U.S. Dist. LEXIS 138638, at *3 (S.D.N.Y. Sept. 25, 2012) (denying the

motion under Rule 23(c)(1)(C) and attempt at "re-argument" because "[s]ince th[e] hearing, the facts pertinent to the efficiency inquiry have not materially changed, and plaintiff has not made a showing of changed circumstances."); *Fleischman v. Albany Med. Ctr.*, No. 06CV0765, 2010 U.S. Dist. LEXIS 23727, at *11-12 (N.D.N.Y Feb. 13, 2010) (where plaintiff had not presented any previously-unavailable facts, but instead "relie[d] on information that was readily available to Plaintiffs at the time of the initial motion [for certification]" in making new arguments, plaintiffs did not demonstrate "the requisite changed circumstances" under Rule 23(c)(1)(C)), *aff'd* 639 F.3d 28 (2d Cir. 2011); *see also Young v. Beard*, No. 2:11-cv-02491, 2014 U.S. Dist. LEXIS 2216, at *6 (E.D. Cal. Jan. 7, 2014) (declining to consider a motion under Rule 23(c)(1)(C) because it contained arguments that were "based upon evidence plaintiff reasonably could have procured at the time he originally moved for class certification").

### B.   There are no new facts or changed circumstances here.

Plaintiff has not even attempted to identify any factual circumstances that are different from those existing at the time that she moved for certification.  Since the Court denied class certification, there has been no further development with respect to any of the issues that the Court held necessitated denial.  Indeed, apart from the entirely unconvincing nature of Plaintiff's attorneys' arguments (which are addressed below), the "facts" by which Plaintiff's attorneys now seek reversal of the decision (*e.g.*, Plaintiff's purported "fees records" and the new Declaration attesting to their general conveyance of settlement offers and the alleged conveyance of the $20,000 individual offer), all could have been provided during the certification briefing, which prevents their proposed consideration under Rule 23(c)(1)(C).  Nor can any of these new "facts" or the related arguments be considered under the plain text of Local Civil Rule 6.3.

Furthermore, despite their attempt in this motion to minimize the nature of Midland's prior arguments regarding inadequacy, this is not a situation where Plaintiff's attorneys can claim

surprise as to the Court's decision. Adequacy was the very first argument advanced by Midland against certification, *see* Dkt. Mo. 73 at pp. 5-9, with Midland focusing on Plaintiff's attorneys' complete failure to involve Plaintiff in any aspect of this case, including settlement discussions and discovery, as well as on the terms of the retainer agreement. *See id.* Indeed, Plaintiff's reply memorandum in support of her motion for class certification spent 7 pages of the 15-page brief on adequacy, *see* Dkt. No. 87, with her counsel even presenting a new declaration that attempted to address some aspects of the challenge to adequacy, *see* Dkt. No. 88, but which failed to address *any* of the facts cited in the Court's opinion as the bases for its denial of certification. *Id.* (Not once did Plaintiff claim to have conveyed *any settlement offer.*)   With respect to those unaddressed arguments, Plaintiff was instead content to boldly claim in her brief that Midland's legal position was a "minority view," that its arguments were "specious," and that the actions of her attorneys were "perfectly proper" and would, in any event, only "be on counsel's shoulders," thereby having no effect on adequacy. (Dkt. No. 87 pp. 4-6.)   Plaintiff was wrong on all fronts.

Every proffered "fact" by which Plaintiff has now moved was, *at the very least*, "readily available to Plaintiff at the time of the initial motion." *Fleischman*, 2010 U.S. Dist. LEXIS 23727, at \*11 (denying relief under Rule 23(c)(1)(C)); *System Management Arts, Inc. v. Avesta Technologies, Inc.*, 106 F. Supp. 2d 519, 520-21 (S.D.N.Y. 2000) (denying reconsideration and noting that a party may not advance "new facts, issues, or arguments that were previously available but not presented to the court."). "By now asking the court to revisit issues similar to those presented and argued when the court was deciding whether to certify, [Plaintiff is] effectively seeking repetitive proceedings in hopes of keeping alive the possibility of obtaining class certification." *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005).   That is not allowed under Local Civil Rule 6.3 or Rule 23(c)(1)(C).   The analysis should end here.

III.   **PLAINTIFF FAILS TO CONTEST THE MAJORITY OF THE FINDINGS ON WHICH THE COURT FOUND HER ATTORNEYS TO BE INADEQUATE.**

Assuming that Plaintiff's motion is even procedurally viable, it is nonetheless woefully incomplete in that it fails to dispute the majority of the findings based on which the Court found her attorneys inadequate. In its Memorandum and Order denying class certification, the Court identified a number of discrete findings that "foreclosed a finding by this Court that [Plaintiff's attorneys have] the ability to fairly and adequately represent the interests of the class." (Dkt. No. 106 p 12.) Those findings included: (1) Plaintiff's attorneys' failure to inform Plaintiff of the $20,000 individual settlement offer made by Midland, *see id.* at pp. 7-8; (2) Plaintiff's attorneys' making a $900,000 classwide settlement offer without Plaintiff's knowledge, *see id.*; (3) Plaintiff's attorneys' failure to convey to Plaintiff Midland's classwide settlement counteroffer, *see id.*; (4) the improper terms of the retainer agreement, which equated Plaintiff's acceptance of an individual settlement offer with a politician taking an illegal "bribe," *see id.* at pp. 9-10; and (5) the fact that Plaintiff's attorneys had previously been rebuked in a recent putative class case in the Eastern District of New York for filing a motion for certification prior to serving the defendants in an attempt to foreclose the possibility of an individual settlement. *Id.* at 11.

With respect to the first three findings, the Court, in different sentences of its opinion, cited to the particular portions of Plaintiff's deposition transcript relevant to each one of those three undisclosed settlement offers. *Id.* at 7-8. Each such failure separately informed the Court's decision. *See id.* And, in a statement encompassing each one of those offers, the Court noted that "the discussion and evaluation of settlement offers is perhaps the single most significant point of contact between class counsel and a class representative *throughout the pendency of the action.*" *Id.* at 11 (emphasis added). That bedrock obligation is memorialized in the applicable Rules of Professional Conduct. *See* New York Rule of Professional Conduct 1.4(a)(1)(iii) ("A lawyer shall . . . promptly inform the client of . . . material developments in the matter including

8

settlement or plea offers"). Courts have also repeatedly held that "the absolute obligation to communicate, effectively and accurately, the terms of any offer of settlement for the client's decision is a duty which a lawyer owes to his adversaries and the court as well as his clients." *Deadwyler v. Volkswagen of America, Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991). For these reasons "no type of misbehavior by an attorney is more universally and categorically condemned . . . than the failure to communicate offers of settlement." *Id.* Breach of this obligation is "a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly." *Id.* As the Court held, that was the case here three times over.[1]

With respect to the two remaining findings, *i.e.*, the terms of the retainer agreement and Plaintiff's attorneys' actions in another recent putative federal class action, the Court also found Plaintiff's attorneys' conduct to be both "troubling" and "wrong." *Id.* at 9, 11.

Of these five findings, Plaintiff's attorneys *only* dispute their failure to inform Plaintiff of the $20,000 individual settlement offer. (Midland addresses that specific argument below.) For that reason *alone*, Plaintiff's motion must be denied, as Plaintiff's attorneys remain indisputably inadequate in multiple regards.

### A. Plaintiff's attorneys made an unauthorized classwide settlement offer, which renders them inadequate.

On April 24, 2014, Plaintiff's attorneys tried to settle this case for $900,000. Declaration of Timothy J. St. George, Esq., executed October 28, 2014 ("TJS Decl.") ¶ 5. As the Court noted, Plaintiff was never told any such offer had ever been made, including up until the time she was deposed, which was almost *three months after* Plaintiff's attorneys made that offer. (Dkt. No. 106 at p. 8.) Plaintiff's attorneys, however, assert that this misconduct should be excused because they had discussed settlement with Plaintiff and previously reached agreement as to "the

---

[1] In fact, much less egregious conduct interfering with settlement -- mere foot dragging in formally consummating a settlement agreement -- has been sanctioned under the "bad faith" prong of 28 U.S.C. § 1927. *See, e.g., Forman v. Mt. Sinai Medical Center*, 128 F.R.D. 591, 605-06 (S.D.N.Y. 1989).

parameters for what would be an acceptable class settlement . . . even though Ms. Kulig was, as Defendants have noted, unaware of what that initial demand was." (Pltf's Mem. at pp. 6-7.)

This is the first time that Plaintiff's attorneys have provided that attempted justification for their conceded failure to inform Plaintiff that they were seeking to settle the case. (This issue was simply *ignored* by Plaintiff in the reply brief in support of certification. Thus, this argument is improper.) Moreover, it strains credulity that Plaintiff had agreed with her attorneys on the "parameters" by which she was willing to settle the case on a classwide basis, when Plaintiff testified during her deposition she was unaware of: (1) what the claims in the case are; (2) who the parties are; (3) what a class action is; (4) who is in the class, (5) who the class representative is; and (6) what the role of the class representative is. (Dkt No. 71-1, Ex. B) (Kulig Tr. at pp. 33:18-35:1; 71:11-72:15; 74:12-77:25; 79:3-20; 89:23-96:5; 104:22-105:22; 113:9-114:16; 132:21-133:6; 157:12-19; 193:15-22; 196:15-197:2; 200:17-23; 201:4-7).

This new argument is also contrary to Plaintiff's deposition testimony that her "attorney understands things. I don't," and that she "just did whatever [her attorneys] told [her]" in this case. (Dkt No. 71-1, Ex. B) (Kulig Tr. at pp. 73:5-14; 89:6-20; 181:7-23).[2] In fact, Plaintiff testified that the subject of settlement was "something that my attorney knows, but I don't." (Dkt No. 71-1, Ex. B) (Kulig Tr. at p 204:8-9); *see also* (Dkt No. 71-1, Ex. B) (Kulig Tr. at pp. 203:2-24; 205:17-208:8) (numerous instances where Plaintiff professed total ignorance of the settlement process and the nature of any settlement offers).[3]

---

[2] These are only some of the many times that Plaintiff made this point during her deposition. She unabashedly testified to her complete and utter ignorance of and ability to understand anything of a "legal" nature, including as such things applied to this case, on many, many occasions.

[3] As Midland explained in its memorandum in opposition to class certification, Plaintiff's complete lack of understanding of the substance and posture of this action also renders her an inadequate class representative. *See, e.g., In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (finding a lack of adequacy based on the proposed class representative's "shocking" ignorance of the facts and status of the case).

As courts have held, this state of affairs renders Plaintiff's attorneys inadequate. *See, e.g., Byes v. Telecheck Recovery Servs.*, 173 F.R.D. 421, 428 (E.D. La. 1997) (finding counsel inadequate when plaintiff's attorney failed "to secure [plaintiff's] authority to make settlement proposals on behalf of the class" but made a "$170,000 settlement offer," of which plaintiff had "no knowledge"); *Deadwyler*, 134 F.R.D. at 140-141 (imposing sanctions in class action case based, in part, on the fact that "none of the Plaintiffs had ever extended or defined any authority to settle the case" despite the offer made by their counsel).

Furthermore, Plaintiff's attorneys' apparent belief that they have free reign to negotiate a settlement without mentioning to Plaintiff the offers being made on her behalf only underscores that they have taken complete and unfettered control of this action in derogation of the requirements of Rule 23(a)(4) and Rule 23(g). *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) (certification is inappropriate where the class representatives have "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys").[4] Certification must be denied.

**B.     Plaintiff's attorneys admit that they failed to convey Midland's classwide settlement counteroffer, which renders them inadequate.**

On June 14, 2014, Midland made a classwide settlement counteroffer in response to Plaintiff's April 24, 2014 classwide settlement offer. TJS Decl. ¶ 6. Plaintiff's attorneys admit they failed to convey Midland's June 2014 settlement counteroffer to Plaintiff, now "apologizing" for that oversight. (*See* Dkt. No. 115 ¶ 7.) That was not, however, a brief lapse in communication. As noted by the Court, a full month after that offer had been conveyed, Plaintiff

---

[4] And this pattern continues. Despite Midland's demand for her attendance, Plaintiff's attorneys did not have Plaintiff attend the formal, one-day mediation of this case that occurred in September 2014. TJS Decl. ¶ 8. Notably, that mediation occurred in Manhattan, where Plaintiff resides. No reasons were ever provided for her non-attendance, despite the fact that her attorneys insisted on being told beforehand exactly which Midland employee would be attending (and did attend) from California. *Id.*

testified at her deposition that she was totally unaware that any classwide settlement offer had ever been made by Midland. (Dkt. No. 106 at p. 8.)

Nevertheless, Plaintiff's attorneys seek to justify this misconduct on two grounds. First, they claim that the non-communication was acceptable because "additional information was needed from Defendants in order to assess the potential value of the case for the class compared to the class offer that Midland had made." (Pltf's Mem. at pp. 4-5.) Foremost, the Rules of Professional Conduct recognize no such exception. *See* New York Rule of Professional Conduct 1.4(a)(1)(iii) ("A lawyer shall . . . promptly inform the client of . . . material developments in the matter including settlement or plea offers"); *Zito v. Harding*, 975 N.Y.S.2d 2, 3 (1st Dep't 2013) ("If proven, the failure to communicate a settlement offer would constitute a violation of Rules of Professional Conduct . . . .") (citing Rule 1.4(a)(1)(iii)).  Nor does applicable precedent support such an argument, as courts consistently hold that the failure to convey a classwide settlement offer prevents a finding of adequacy. *See, e.g.*, *Byes*, 173 F.R.D. at 428 (finding a lack of adequacy when counsel failed to communicate the plaintiff the defendant's "$15,000" classwide counteroffer to the "$170,000" classwide settlement offer made by the plaintiff).

This argument is also false as a matter of fact. Before Plaintiff was deposed on July 15, 2014, Plaintiff's attorneys had already been provided with information about each putative class member's account, payment history, and collection lawsuit (June 17); received responses to 68 requests for admission (June 17); been provided approximately 2,000 pages of documents in discovery (June 17); taken two Rule 30(b)(1) depositions of Midland's employees (June 25); and conducted a seven-hour Rule 30(b)(6) deposition of Midland's representative on numerous topics (June 26). TJS Decl. ¶ 7.[5]

---

[5] In fact, Plaintiff's attorneys' very aggressive discovery practices have been documented in this district. *Okyere v. Palisades Collection, LLC*, 300 F.R.D. 149, 151 (S.D.N.Y. 2014) ("plaintiff took positions that unnecessarily increased defendants' attorney's fees — such as by seeking disproportionate discovery").

In making this argument, Plaintiff's attorneys also ignore the fact that Midland's June 14, 2014 offer was *a counteroffer* to the classwide settlement offer previously made by Plaintiff's attorneys in April 2014. TJS Decl. ¶ 6. Plaintiff's attorneys cannot have it both ways: on the one hand considering themselves to have obtained sufficient information in discovery to settle the action on a classwide basis for $900,000, and on the other hand attempting to retroactively rationalize their failure to communicate any counteroffer to Plaintiff because of their contention that even more discovery was needed.[6]

Second, as with the failure to discuss the $900,000 offer with Plaintiff, her attorneys seek to justify their failure to transmit Midland's counteroffer on the basis that the counteroffer was outside the "parameters" that Plaintiff had authorized for a class settlement. (*See* Pltf's Mem. at p. 6). For the reasons stated above, that is wholly implausible, and it is also an entirely new argument that cannot be presented for the first time now.

### C. The terms of the retainer agreement are improper, and the belated "addendum" to that retainer agreement is no cure.

As the Court held, the retainer agreement contained improper and false statements that were designed to discourage Plaintiff from accepting an individual settlement offer, including by warning her that accepting such an offer was the same as a politician illegally "taking a bribe." (Dkt. No. 106 at p. 9). In response, Plaintiff's attorneys provided an "addendum" to their retainer agreement toning down the offending language, which was hastily executed on October 9, 2014, just in time for inclusion with their motion. (*See* Dkt. No. 115, Ex. B.)

Plaintiff has provided no authority for the proposition that class counsel can attempt to retroactively cure identified issues regarding their adequacy after certification is denied. To the

---

[6] To be clear, prior to even making this counteroffer on June 14, 2014, Midland had already disclosed to Plaintiff's attorneys for settlement purposes the class size information relating to the class as pled. TJS Decl. ¶ 4. Plaintiff's opening offer of $900,000 was based on that class size. TJS Decl. ¶ 5. Also, at no time prior to the certification briefing did Plaintiff's attorneys inform Midland's counsel that they were not communicating Midland's offer because more discovery was needed. TJS Decl. ¶ 6.

contrary, courts focus on the conduct of proposed class counsel *up until the time of certification* in assessing adequacy.  Joseph M. McLaughlin, McLAUGHLIN ON CLASS ACTIONS § 4:38 (10th ed. 2013) ("Certification may be denied based on proposed class counsel's mishandling of the pending suit, prior putative class actions or proven ethical lapses of the case at hand or prior legal practice."); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. 2002) (in assessing adequacy a court "examines counsel's competence based by present performance").

Indeed, the endorsement of Plaintiff's proposed approach would render Rule 23(a)(4) and Rule 23(g) ineffective.  As applied to the facts of this case, proposed class counsel could always, once such misconduct was discovered and then cited by the court as a basis to deny certification, simply: (1) communicate the settlement offers previously withheld; (2) amend false discovery responses about which the client was never consulted; and (3) revise the coercive provisions of retainer agreements.  The bell cannot just be "unrung" in the manner suggested by Plaintiff's attorneys, especially after Plaintiff had been operating under the terms of the improper retainer agreement here for almost two years.  *See, e.g., Lexington Ins. Co. v. Swanson*, No. C05-1614P, 2007 U.S. Dist. LEXIS 31881, at *8 (W.D. Wash. May 1, 2007) ("[O]nce a witness has been shown a document, there [is] no way to 'unring the bell' and tell the witness to forget about the document.").  That approach should not be adopted.[7]

Further, because Plaintiff's attorneys now claim to have previously conveyed Midland's opening $20,000 settlement offer (albeit while still informing Plaintiff that its acceptance would be like illegally accepting "a bribe"), another term of the retainer agreement becomes relevant.  In the "attorney's fees" section of the retainer agreement, Plaintiff's attorneys detail the calculus

---

[7] Moreover, the "addendum" itself remains highly charged and still objectionable under the Court's analysis.  It still indicates that Plaintiff needs to consider the circumstances of the putative class members in considering any individual settlement offer, stating that Plaintiff "should try to make decisions that are fair to everyone in the class" and "should think about the other class members," whom Plaintiff's attorneys refer to as "victims," before accepting any individual settlement.  (*See* Dkt. No. 115, Ex. B.)

for dividing up the total of any "recovery" in this case if a class is not certified. (*See* Dkt. No. 71-3, Ex. C) (the unredacted retainer agreement). In paragraph 3(e) of that agreement, Plaintiff's attorneys state that they are entitled to use the following alternative calculus, depending on which results in the "greater" attorneys' fee to them: (1) a contingency fee of 40%, plus costs; or (2) a "contingent hourly" arrangement whereby (i) all costs are first applied against the award, (ii) Plaintiff's attorneys and Plaintiff split the next $2,000, (iii) Plaintiff's attorneys then recover the full amount of their internally-calculated fees at their identified rates of $200, $400, and $450 per hour,[8] and (iv) any remaining funds are then finally disbursed to Plaintiff. *Id.*

Under this arrangement, Midland's prior settlement offer of $20,000 would be divided as follows: $1,000 to Plaintiff and $19,000 to her attorneys; a 95% contingency fee. (Under the formula, Plaintiff's attorneys' costs would be applied against the $20,000, Plaintiff would then receive $1,000, and Plaintiff's attorneys' fees would then consume the remainder of the award. *See id.*) Indeed, given the substantial amount of time Plaintiff's attorneys would undoubtedly claim to have spent on this case, even if Midland were to offer Plaintiff the outlandish sum of $100,000 to settle the case individually, Plaintiff would likely receive only $1,000, whereas her attorneys would claim the remaining $99,000. The retainer agreement thus provides no incentive for Plaintiff to settle her claim, since she was guaranteed from the outset of this case to receive virtually nothing. Hence, even if Plaintiff's attorneys did communicate any individual settlement offer to her, as they now claim to have done with respect to the October 2014 settlement offer, it is little wonder that the offer was declined in view of what Plaintiff would actually receive.[9]

---

[8] These rates are set forth in the retainer agreement based on the years of experience of counsel. Based on the year of their admission to the bar, Mr. Ahmad Keshavarz would bill at a rate of $400 per hour, Mr. Charles Delbaum at a rate of $450 per hour, and Mr. Michael Pereria at a rate of $200 per hour. *Id.*

[9] In this regard, Plaintiff disturbingly testified that she had "no idea" how this formula worked, and that she was "just accepting whatever her attorney tells her" that she agreed to in terms of the division of any monetary recovery between herself and her attorneys. (Dkt No. 71-1, Ex. B) (Kulig Tr. at p. 194:8-20).

This remarkable fee arrangement is highly excessive and provides yet another reason for the disqualification of Plaintiff's attorneys. *See* New York Rule of Professional Conduct Rule 1.5 ("A lawyer shall not make an arrangement for, charge, or collect an excessive or illegal fee or expensive. A fee is excessive when, after review of the facts, a reasonable lawyer would be left with a firm and definite conviction that the fee is excessive."); *Gair v. Peck*, 6 N.Y.2d 97, 112 (1959) ("when the contingent fee reaches or approaches 50% it ceases to be a measure of due compensation for professional services rendered and makes the lawyer a partner or proprietor in the lawsuit"); *see also United States ex rel. Taxpayers Against Fraud v. GE*, 41 F.3d 1032, 1047 (6th Cir. 1994) ("Walsh could have contracted to give the Heart Fund, the Cancer Society, a chauffeur, or a cook 75% of his bounty, if he liked. However, under the rules of ethics adopted by the legal profession, Hall & Phillips would be prohibited from contracting with a client for a 75% contingency fee."); *Travel Arrangers, Inc. v. Western Airlines*, 623 F.2d 1255, 1278 (8th Cir. 1980) (contingency fee of 45% was the "outer boun[d] of reasonableness").

**D.    Plaintiff's attorneys' attempted explanation of the challenged conduct in the *Mayorga* case misses the point.**

In its denial of class certification, the Court noted that this was "not the first time" a court within this circuit had taken notice of "troubling conduct" by Plaintiff's attorneys in connection with the communication of "settlement offers in the context of [a] FDCPA class action suit." (Dkt. No. 106 p. 10.) In *Mayorga v. First Resolution Investment Corporation*, 12-cv-587 (DLI) (VVP) (E.D.N.Y.), Plaintiff's attorneys filed a motion for class certification before even serving the defendants. *Id.* at Dkt. No. 4. The district court denied the motion *sua sponte*, noting that such a filing was "absurd," exceptionally "premature," and inconsistent with the enumerated rules of practice in that court. *Id.* at Dkt. No. 6. The court stated that it was "unconscionable for plaintiff to make a motion for class certification simply to avoid plaintiff's recovery from defendant. The court takes a dim view of this practice." *Id.*

In response, Plaintiff's attorneys state that this practice was approved of in *dicta* in the Seventh Circuit's opinion in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Plaintiff's attorneys misunderstand the relevance of the *Mayorga* decision to the issues here. As the Court noted, it is illustrative of the fact that Plaintiff's attorneys will seemingly do everything in their power to ensure that an individual settlement does not occur on their watch. Plaintiff's attorneys also provide no explanation as to how one could have moved for class certification consistent with the rigors of Rule 23(a) and (b) and the restrictions of Rule 11 before taking any discovery or before even having any conversations with defendant's counsel.

Therefore, the Court was justified in likewise taking a "dim view" of this practice in assessing Plaintiff's attorneys' adequacy. (*See* Dkt. No. 106 at p. 10.)

## IV. PLAINTIFF HAS NOT CARRIED HER BURDEN TO DEMONSTRATE THAT THE $20,000 INDIVIDUAL SETTLEMENT OFFER WAS COMMUNICATED.

There is no dispute that the $20,000 individual settlement offer from Midland was the very first settlement offer to occur in this case.  TJS Decl. ¶ 3.  In their reply memorandum in support of their motion for certification, as with *all* of the other undisclosed settlement offers, Plaintiff's attorneys did not dispute that the $20,000 settlement offer was not conveyed or offer any proof to the contrary. (Dkt. No. 86 at p. 7.)  Instead, Plaintiff's attorneys cavalierly argued: "There was no point in counsel's mentioning Midland's *opening settlement offer* to Ms. Kulig when Midland had not yet provided the responses to discovery requests that counsel needed in order to completely evaluate the offer and advise Ms. Kulig about it." *Id.* (emphasis added).

In an abrupt departure from that admission, Plaintiff's attorneys now claim to have misspoken, claiming that they did convey that opening individual settlement offer, and that the conveyance is reflected in Mr. Keshavarz's "contemporaneous fees records" of February 4, 2014. (Pltf's Mem. at p. 4.)  Even taking the most charitable view of that new, self-serving

"evidence," the record here forecloses the conclusion that Plaintiff's attorneys can prove their adequacy by "at least a preponderance of the evidence." *Brown*, 609 F.3d at 476.

Aside from their attempt to disclaim their prior admission on this issue, Plaintiff's attorneys point to the deposition testimony of Plaintiff, where she states that "she may have heard something" about the $20,000 offer, "but she does not remember exactly what it was." (Pltf's Mem. at p. 4.) (citing Kulig Tr. at p. 204:23-205:8). That equivocal testimony, which was provided after a speaking objection where Mr. Keshavarz changed the nature of the question being asked,[10] *see* Dkt No. 71-1, Ex. B (Kulig Tr. at p. 205:3-6), is neither clear nor *remotely* persuasive. Further, when asked to clarify her answer as to when she "may have heard" about the individual offer, Plaintiff stated "I don't know the basic answer to that. I mean, something like that may happen. I don't know." (Dkt No. 71-1, Ex. B) (Kulig Tr. at p. 205:14-22). In any event, the Court *already considered* this passage of deposition testimony, along with the entirety of the questioning on the conveyance of the $20,000 settlement offer, in reaching its decision. (Dkt. No. 106 at p. 7) (citing Kulig Tr. at **pp. 203:1-206:14**.) And, the other portions of pages **203:1-206:14** of the deposition transcript are much clearer:

> **Q.**    Are you aware of whether the defendants previously offered to settle this case with you for $20,000?
>
> **A.**    I just need to ask – *I don't know myself.*
>
> **Q.**    Is that familiar to you that the defendants previously offered to settle this case for $20,000 with you?
>
> **A.**    I just need to ask my attorney. *It is something that he knows, not me.*

(Dkt. No. 71-1, Ex. B) (Kulig Tr. At p. 203:2-13) (emphases added).

Plaintiff further testified she "would be surprised if [she] got any money" in connection with this case, *see* Dkt No. 71-1, Ex. B (Kulig Tr. at p. 195:4), which is inconsistent with the

---

[10] Plaintiff's attorneys simply omitted from their brief Mr. Keshavarz's speaking objection and his changing of the question being asked. (*See* Pltf's Mem. at p. 4.)

conveyance of any settlement offer in this action, let alone a $20,000 individual settlement offer. Plaintiff also stated she had no knowledge of any attempts to mediate the case. (Dkt No. 71-1, Ex. B) (Kulig Tr. at p. 205:23-206:4). Finally, although Plaintiff (with her counsel) made extensive changes to her deposition testimony in her errata sheet on August 18, 2014, *see* Dkt. No. 88-2 p. 1-3, which Plaintiff served for the first time as an attachment to her reply brief in support of the motion for class certification, the passages regarding her lack of knowledge of the $20,000 offer were not changed. *Id.* At best, therefore, Plaintiff's attorneys are disputing their own prior admissions and the sworn testimony of their client.

Plaintiff's motion is also notable for what it lacks: there was no affidavit swearing to these facts from Plaintiff herself. Instead, there is only the self-serving Declaration of one of her attorneys. That failure to involve Plaintiff is also illustrative of the broader problem -- Plaintiff's attorneys' complete domination and disregard of their client.

The motion also lacks any records of the transmission of the offer. Plaintiff's attorneys purport to provide "contemporaneous fees records," which conveniently state with *remarkable* clarity and fulsomeness: "Call to client to update her on status of case, to relay their offer of settlement. Discussed offer of settlement in detail. Answered any questions she might have. She instructed me to rejected [sic] the offer. Relayed the same to opposing counsel." (*See* Dkt. No. 115.) That such detailed discussions allegedly occurred over the course of 30 minutes is, of course, inconsistent with Plaintiff's complete lack of recollection of any such offer during her deposition. More fundamentally, however, that "record" is nothing more than a text box that Mr. Keshavarz typed into his Declaration on the day he signed the Declaration and filed this motion. It is not a document, let alone a document with verified metadata.[11]

---

[11] If the Court is at all inclined to revisit this issue, Midland requests discovery of Plaintiff's attorneys' time records for this case under the appropriate forensic standards.

In similar contexts, courts have found this type of affidavit to not credibly support a fee petition. *Kingvision Pay-Per-View v. Lujo's Latinos Bar & Rest., Inc.*, No. 05 CV 10202, 2007 U.S. Dist. LEXIS 66588, at *1 (S.D.N.Y. Aug. 28, 2007) (holding that the plaintiff should "not be awarded attorneys' fees because Plaintiff failed to submit contemporaneous time records; instead, plaintiff's papers include an affidavit listing date, claims for inconsistent numbers of hours, description of work, and hourly rate."); *New York City Dist. Council of Carpenters Pension Fund v. FPC Contr. & Dev. Corp.*, No. 03Civ.3578, 2006 U.S. Dist. LEXIS 4928, at *15 (S.D.N.Y. Feb. 3, 2006) (rejecting claim for fees based only on affidavit where attorney "failed to submit to the Court contemporaneous time records"). And, if such documentation was in existence as of February 4, 2014, it could have easily been provided with the other declaration that Mr. Keshavarz submitted with Plaintiff's August 18, 2014 reply memorandum in support of the motion for certification, yet it was not. The Court should not credit that "record" here.[12]

Plaintiff's attorneys have not carried their ultimate burden to reverse the Court's decision.

## V.   THERE ARE SUBSTANTIAL ADDITIONAL GROUNDS PREVENTING A FINDING OF ADEQUACY.

As set forth above, Plaintiff's motion is procedurally improper, and the majority of the findings on which the Court based its certification decision are not disputed. Plaintiff's attorneys also have not carried their burden to prove the conveyance of the $20,000 settlement offer. If doubts as to Plaintiff's counsel's adequacy somehow remain, however, class certification should nonetheless be denied.

---

[12] The fact that one of Plaintiff's attorneys attests in his Declaration to the transmission of individual settlement offers in other cases, as well as the conveyance of the offer made by Midland to Plaintiff in October 2014 after the Court's Memorandum and Order denying class certification, is irrelevant. Given the Court's Memorandum and Order denying class certification, it is difficult to imagine a situation where Plaintiff's attorneys would not have tendered the October 2014 offer to Plaintiff. Plaintiff's attorneys also should not be rewarded for complying with their most basic ethical duties in other unrelated cases, while still admitting to have not fulfilled those ethical duties in this case.

Although the Court found it "unnecessary" to address the full roster of Midland's identified concerns regarding the adequacy of Plaintiff's attorneys, *see* Dkt. No. 106 at p. 4, all of those concerns remain relevant.  In their memorandum in opposition to class certification, Midland demonstrated that Plaintiff's attorneys had, among many other issues: (1) failed to educate Plaintiff on even the most basic issues in the case; (2) failed to involve Plaintiff in discovery (to the point where Plaintiff openly *disagreed* with the responses to interrogatories and requests for admission that her attorneys had served in discovery, including on the most basic issues in this case) and had instead simply authored false responses on her behalf; and (3) failed to keep Plaintiff informed of the posture of the case, such as the status of discovery, whether a motion for class certification had been filed (it had, but Plaintiff had never seen it or even been informed of its existence), and whether the parties had considered or discussed mediation. (*See* Dkt. No. 73 at pp. 4-9); New York Rule of Professional Conduct 1.4(a)(3) (requiring that a client be kept reasonably informed of the status of the case).[13]  Although Midland will not repeat all of those *many* arguments here, they continue to independently preclude a finding of adequacy.

## CONCLUSION

For all of the above reasons, Midland requests that the Court deny Plaintiff's Motion for Reconsideration and to Alter Order Pursuant to Fed. R. Civ. P. 23(c)(1)(C).

---

[13] As detailed in Midland's opposition to the motion for class certification, Plaintiff's attorneys' failure to educate Plaintiff and to keep her informed throughout this action also affects Plaintiff's adequacy in equal measure.  In addition to the issues identified by the Court in its opinion with respect to the conduct of her counsel, Plaintiff testified during her deposition to a total lack of knowledge of every basic issue in this case, including, among many others: (1) the names of any of the Defendants and the nature of their business; (2) who was the "plaintiff" and who were the "defendants"; (3) who was serving as her counsel, as well as their names; (4) what the phrase "statute of limitations" means; (5) the role/substance of any pleading or motion in the case, none of which she recalled seeing; (6) all of the allegations of the Complaint, which she did not understand, disagreed with upon explanation, and had not reviewed; (7) the progress of the lawsuit; (8) any discovery-related events; (9) any criteria for class membership; and (10) her role as the class representative. (*See* Dkt. No. 73 at pp. 4-9.)  These issues, which demonstrate that Plaintiff lacks the ability to "protect the interests of the class" against the "competing interests of the attorneys," *Maywalt*, 67 F.3d at 1077-78 -- a scenario that has plainly occurred here -- also remain highly relevant to the overall adequacy determination.

Dated: New York, New York
        October 28, 2014

                              TROUTMAN SANDERS LLP


                              By: _____
                                  Karen F. Lederer, Esq.
                                  Timothy St. George, Esq. (*pro hac vice*)
                                  Kevin P. Wallace, Esq.
                              The Chrysler Building
                              405 Lexington Avenue
                              New York, New York 10174
                              (212) 704-6000

                              *Attorneys for Defendants*