**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| **CAROL KULIG** | ) | No. Civ **1:13-cv-04715-PKC** |
| *on behalf of herself and all others similarly situated*) | | |
| **Plaintiff** | ) | |
| | ) | |
| **-v.-** | ) | |
| **MIDLAND FUNDING, LLC,** | ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.** | ) | |
| **ENCORE CAPITAL GROUP, INC.** | ) | |
|    formerly MCM CAPITAL GROUP, INC. | ) | |
| **AMANDA PEREZ** | ) | |
| **Defendants** | ) | |

----------------------------------------------------------------x

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION AND
TO ALTER ORDER PURSUANT TO FED.R.CIV.P. 23(c)(1)(C) [DE 113-114].**

## I.     Introduction

Defendants have mischaracterized the Motion for Reconsideration and to Alter or Amend now before the Court. Defendants assert that "the premise of Plaintiffs' motion appears to be that their failure to communicate the $20,000 offer is the only issue that prevented a finding of adequacy." (Doc. 116 at p.1)   This is wrong.  While the perceived failure to convey the initial individual offer, which did not in fact occur, is certainly at the heart of Plaintiff's within motion, it was not the only matter addressed as it was not the only factor that troubled this Court.  Other concerns include counsel's authority to make an initial class settlement demand, the admitted inadvertent failure to convey Defendants' opening class settlement offer, the content of a provision of the retainer agreement with plaintiff, and the undersigned' filing of a prophylactic Motion for Class Certification in a case pending in the Eastern District of New York.  Each of these issues is further discussed below.

Defendants protest that some of the facts upon which Plaintiff has relied in seeking reconsideration, or to alter or amend this Court's class counsel adequacy decision, "could have been provided during the certification briefing, which prevents their proposed consideration under Rule 23(c)(l)(C)." (Docket 116 at p. 6) One such fact, according to Defendants, is the undersigned's conveyance of the individual settlement offer to Ms. Kulig.  However, as explained in Plaintiff's initial brief in support of the pending motion, this fact had previously been set forth in Plaintiff's Reply Brief on Class Certification; the problem was that it was not clearly explained there.  (Docket 114 at p. 4).  For example, a typographical error led counsel to refer to the failure to convey the initial offer, while in fact they intended to refer to the initial offer "to the class."

Counsel are primarily trying to elucidate now what they failed to adequately express in

their class certification reply brief.  Mr. Keshavarz' new declaration submitted in connection with the initial brief in support of the pending motion clarifies and supports conveyance of the initial individual offer to Ms. Kulig.  So too do Plaintiffs contemporaneous time records.  While these pieces of evidence supporting this previously-asserted fact were not previously presented to this Court, they may be considered in connection with a Rule 23 Motion to Alter or Amend because such a Motion contemplates consideration of new evidence.  *In re J.P. Morgan Chase Cash Balance Litigation*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009).

Defendants suggest that if this Court is inclined to revisit the issue of whether the $20,000 offer was conveyed to Ms. Kulig, then Midland should be permitted discovery under the appropriate forensic standards of Plaintiffs' attorneys' time records that document that act. (Docket 116, n. 11 at p. 19) Counsel hereby consent to such an examination.

Defendants contend there are "no new facts" that justify reconsideration. But defendants' themselves created a major new fact: on October 7, 2014 they re-tendered their previously rejected $20,000 individual offer of settlement. In response, Ms. Kulig clearly rejected that offer in writing while also acknowledging her understanding in the amendment to the retainer addendum that the decision in whether to accept or reject an individual settlement offer is ultimately hers.  (Docket 115 at 5, 7).

## II.   Plaintiff's Counsels' Making and Conveying of Initial Settlement Offers was Inadvertently Deficient in One Respect, but the Class was not Harmed by this Error.

Defendants, apparently believing that Mr. Keshavarz would commit perjury to preserve his role as class counsel, continue to argue that the individual settlement offer of $20,000 was not conveyed to Ms. Kulig despite counsel's previous declaration to the contrary.  They support this position by noting that Ms. Kulig signed an errata sheet, but did not alter her testimony regarding whether she recalls being told about the $20,000 individual settlement offer. That simply

demonstrates that her memory that she may have been told about it did not improve between the July 15, 2014 deposition and the August 13, 2014 errata sheet.

The parties do, however, agree on one point: counsel for Plaintiff should have relayed defendants' June 17, 2014 class offer to Ms. Kulig.  However, defendants' extensive briefing notwithstanding, there still is absolutely no evidence that this omission was other than "an inadvertent lapse in communication." (Order p. 8).  It is Mr. Keshavarz's practice to always forward settlement offers to the client, no matter how weak he believes the offer. (Docket 115, Keshavarz Decl. ¶ 7)  The failure to do so in this instance was an inadvertent oversight. Id. While not an excuse for this oversight, it is noteworthy that defendants' opening class offer was singularly anemic: zero in FDCPA class statutory damages (which would be up to $500,000, given defendants' stipulation as to net worth (Docket 56 (agreeing to consider Encore's net worth) and Docket 1-1 pp. 37, 38 (Encore's financial disclosures to SEC); zero in GBL 349(h) statutory damages (a mandatory $50 per class member, or approximately $100,000, given the class size of nearly 2,000 members ultimately disclosed by defendants), zero in mandatory trebling of actual damages under Judiciary Law 487, and zero for the named plaintiff. (Keshavarz Decl. ¶ 3)  Regardless of what Ms. Kulig's reaction to the offer might have been if it had been conveyed, as it should have been, putative class counsel could never have characterized it to this Court as fair, adequate and reasonable for the class.

Timing is also important here. Defendants criticize Ms. Kulig and her counsel because "Plaintiff also stated [in her July 15 deposition that] she had no knowledge of any attempts to mediate the case." (Docket 116 at p. 19). Defendants have never raised this concern before, and with good reason. What Defendants omit is that discussions about whether and under what terms to have a mediation were raised for the first time on July 10, 2014 (just 5 days before the

deposition) and that Defendants refused to commit to a mediation prior to deposing Ms. Kulig. (Keshavarz Decl. ¶ 4, 5) Whether mediation would proceed was unclear because Defendants also refused to produce in advance of the mediation the dollar amounts of judgments against class members, and the dollar amounts sought in pending time barred collection lawsuits, items plaintiff's counsel had informed them was "critical" for mediation. (Id.¶ 6)

Plaintiff counsel's view is that they needed additional class information for further serious class settlement discussions and therefore the failure to convey Midland's paltry opening offer was not harmful to the class. (Docket 114 at 5, 6). Defendants challenge this position, describing the information they had provided up until that point. (Docket 116 at 12). However, plaintiff made clear the additional information was needed for productive class settlement discussions.

Specifically, when the possibility of mediation was raised for the first time on July 10, 2014, Mr. Keshavarz sent emails to opposing counsel insisting, as a condition of mediation, that Defendants provide in advance, for each class member, "the judgment amounts (for cases in judgment) or the amounts sought in the complaint (for cases that are still open);" and further that "It is for settlement that this information is important (indeed critical)." (Keshavarz Decl. ¶ 6) This is the same type of information Mr. Keshavarz requested during settlement discussions on June 17, 2014. (Keshavarz Decl. ¶ 7). Indeed, since January, 2014, Plaintiff has been seeking – and Defendants had falsely stated they would provide and provide soon – both pre and post-judgment payments.  However, Defendants did not provide post judgment payment histories until just before mediation in September, 2014. (Docket 44-1 p. 1).

The importance of the information regarding judgments and monies collected for settlement discussions is demonstrated by the fact that plaintiff twice moved to compel this

information. (Docket 52, 73)

In their opposition to plaintiff's motion for reconsideration/amendment, defendants state,
"at no time prior to the certification briefing did Plaintiff's attorneys inform Midland's counsel
that they were not communicating Midland's offer because more discovery was needed.""
(Docket 116 at 18, fn. 6) That, however, is not the same as saying that plaintiff's counsel did not
make it clear they needed more information in order to properly evaluate settlement.
Defendants also contend, "Plaintiff's attorneys cannot have it both ways: on the one hand
considering themselves to have obtained sufficient information in discovery to settle the action
on a classwide basis for $900,000, and on the other hand attempting to retroactively rationalize
their failure to communicate any counteroffer to Plaintiff because of their contention that even
more discovery was needed."  Yet the $900,000 class award offer was a request for most of the
damages that the entire class as pled by plaintiff can recover under a best case scenario if
plaintiff went to trial and if this Court decided to award maximum statutory damages, an always
difficult probability to handicap.  The offer assumed recovering most of the full $500,000
FDCPA statutory damages award, the full $100,000 GBL 349 statutory damage award, the award
of all class actual damages (i.e. post-suit, pre-judgment payments), and the trebling of those
damages under the Judiciary Law.  In addition, Defendants would pay class administration fees,
fees to be agreed upon or decided by the court, and an incentive award to Ms. Kulig.  Plaintiffs'
counsel can hardly be faulted for not having gotten Ms. Kulig's permission to ask for in
settlement that which would be a nearly complete victory in trial. .

Importantly, during the discussion of plaintiff's "grand slam" offer, counsel for defendant
and the undersigned also discussed an alternative route to settlement that probably is not
available through litigation but is potentially very attractive both to the putative class and to

defendants: the vacating of all state court judgments and return of money to class members in exchange for a lower statutory damage award.  While there may well be Rooker-Feldman barriers to such a result if the case went to trial, there would be no such barriers to a settlement providing such relief: judgments could be vacated and all payments – both pre and post-judgment payments could be returned.   Indeed, the mass vacatuer of judgments on time-barred collection lawsuits was the key provision of a recent settlement by the NY Attorney General with two major debt collectors who, like Midland, were filing suits on debts that were time-barred given the borrowing statute.

When Defendants previously asserted counsel's inadequacy in a footnote, they offered no authority in support.  Now they have put forward two cases which, while relevant to the issue of conveyance of settlement offers, are distinguishable.  In *Byes v. Telecheck Recovery Servs.*, 173 F.R.D. 421, 428 (E.D. La .. 1997), unlike here, putative class counsel had "attorneys submitted an affidavit to the court which defendants have shown to be false."  This was the factor that the court found even more disturbing than the representative's criminal record.  While it is also true that counsel there "failed to communicate a partial settlement and other settlement offers to her," id. at 428-29, there is no indication in the opinion that this occurred because the putative representative had previously provided guidance on what an acceptable class settlement would be.  Moreover, the Court in Byes noted, as has this Court, that "[t]he adequacy determination is made based on the circumstances of each case," id. at 428, and  "[a]ny one of these factors standing alone might not necessarily render Byes or her attorneys inadequate as class representatives." Id. at 429.

In the second case now raised by Defendants, *Deadwyler v. Volkswagen of America, Inc.*, 134 F.R.D. 128, 140-41 (W.D.N.C. 1991), the admitted failure to transmit settlement offers was

coupled with the "admission that none of the Plaintiffs had ever extended or defined any authority to settle the case," as well as "flagrant misrepresentations on the basis of which the individuals were induced to participate in the action." Neither of these factors is present here.

Plaintiff's counsel could and should have done better here, but this Court is urged to find that, on balance, they would adequately represent the class.

### III.   The Class Retainer has been Superceded and the Offending Provision Removed – a change precipitated by defendants' re-tendering the prior individual offer.

Defendants argue that the revised retainer Ms. Kulig recently signed is inadequate to undo the harm caused by the initial retainer addendum and its provision, now deleted, comparing an individual who settles individually after filing a putative class action to a politician accepting a bribe. This Court found the provision "troubling" (Docket 106 at p.9), and a relevant factor in determining counsel's adequacy. The new retainer, however, omits this term; and this revision is timely under the circumstances here. This is because, following this Court's denial of class certification, Defendants again conveyed precisely the same individual $20,000 offer to Ms. Kulig. She then met with counsel and executed the revised retainer which was attached to Plaintiff's Motion for Reconsideration and to Alter or Amend. (Docket 115 at 5) At the same time, with this provision absent, she again rejected the $20,000 offer, instead continuing to choose to pursue the interests of the class.

Defendants contend that even the revised retainer is improper because it "indicates that Plaintiff needs to consider the circumstances of the putative class members in considering any individual settlement offer." (Docket 116, n.7 at p. 14). This provision is standard in the profession and perfectly appropriate. As noted elsewhere in this brief, a putative class representative assumes some fiduciary duties to the class even before it is certified, and this provision merely recites one of them.

7

Defendants also contend that the retainer agreement is offensive because Ms. Kulig lacked any incentive to accept an individual offer of settlement. This is an argument that was not advanced in their one sentence footnote on counsel's adequacy in their class certification briefing.  It is also wide of the mark for several reasons. First, Ms. Kulig voluntarily chose to try to help others who, like her, had been wrongly sued on time-barred debt by Midland.  There is nothing improper in a class action retainer that fails to give the client an *incentive* to abandon the interests of the class.  On the contrary, courts routinely grant modest service awards to successful class representatives, precisely because their work furthers legitimate class actions, which are valued as a superior means of resolving numerous small cases.

Second, the retainer is not tainted just because if Ms. Kulig had accepted the offer of $20,000, she would only have received $1,000.  $1,000 is very close to the maximum recovery she would be able to obtain under a best case scenario upon prevailing in an individual action. The maximum FDCPA statutory damages in an individual action are $1,000. 15 U.S.C. § 1692k(a)(2)(A). Ms. Kulig has always acknowledged her actual damages are nominal –"the time lost and the expenses incurred in having to defend against" a time barred lawsuit. (Docket 1, Complaint, p. 13 ¶ 70). Ms. Kulig's discovery answers identified expenses as subway fare, photocopies, and postage, an amount "less than $30.00." (Keshavarz Decl. ¶ 8).

Nor would acceptance of the offer when it was discussed with her in early February, 2014, have resulted in a windfall fee for plaintiff's counsel. In the Second Circuit, disproportionality between the recovery for the client and the amount of attorney's fees is largely irrelevant.  See, e.g., *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 169 (2d Cir. 2011) (holding that the purpose of fee-shifting statutes is to generate fees that are *disproportionate* to the plaintiff's recovery in order to attract competent counsel); *Kassim v. City of Schenectady*, 415

F.3d 246, 252 (2d Cir. 2005); *Halecki v. Empire Portfolios, Inc.*, 952 F.Supp.2d 519, 521

(W.D.N.Y. Jul. 9, 2013) (FDCPA litigation).  Fees to counsel which far exceed an individual's

recovery are not uncommon nor unreasonable.

Defendants also contend that a new retainer is ineffective because "[t]he bell cannot just

be "unrung" "especially after Plaintiff had been operating under the terms of the improper

retainer agreement here for almost two years."  [Docket 116 at 14).  However, a revised retainer

agreements have been viewed as curative.  In *Weber v. Goodman*, for example, the court granted

a motion for certification of an FDCPA class, *upon reconsideration after an initial denial,* when

plaintiff's attorneys corrected improper terms in their attorney-client fee arrangement, which had

prompted denial in the initial motion. 1998 WL 1807355, at *6 (E.D.N.Y. June 1, 1998).[1]

## IV.  Counsel's Action in Filing a Prophylactic Motion for Class Certification Merely Demonstrates that Counsel Takes Seriously his Fiduciary Responsibilities to the Class

Defendants assert, "The conduct of Mr. Keshavarz in the other recent class action

[*Mayorga*] also speaks for itself, and it stands as proof of these attorneys' determination to

exclude their client from the settlement dialogue." (Doc. 116 at 7) However, Ms. Mayorga was

in fact promptly and timely presented the limited time individual settlement offers of the

defendants in that case, and rejected the same.  (Docket 114, Keshavarz Decl.. at 17).

Defendants also query that is unclear to them how counsel could "consistent with Rule

11" file a motion for class certification with the filing of the class action. The unanimous

Seventh Circuit answered that question: it opined that the plaintiff seeking to protect a putative

---

[1] In any event, defendants' contention unrealistically assumes that Ms. Kulig has frequently consulted the original retainer over the past two years and so the offending provision is firmly implanted in her psyche.  Defendants asked her about this particular provision regarding a "bribe" during her deposition, but she did not indicate that it had caused her any concern or made her reluctant to take an individual settlement.  (Docket 88-1 p. 39, Kulig Depo. p. 202)  It would therefore not be difficult for her to put a provision she apparently had not considered particularly important out of her mind and to then assent, on a clean slate, to the new addendum that does not contain this language.  Indeed, doing so under these circumstances would be far easier than when a jury is asked to disregard certain testimony it has heard, or a curative instruction is given to remedy improper trial conduct.

class should file the motion for class certification with the complaint and ask for a stay in briefing until class certification discovery could be had. Although Defendants seek to dismiss the importance of *Damasco* by noting that this instruction was dicta, counsel in the Seventh Circuit follow it "in almost every case." Kurgan v. Chiro One Wellness Centers LLC,  2014 WL 1245053, 2 (N.D.Ill. March 26, 2014)("in almost every case of this nature in the Seventh Circuit, counsel for Plaintiffs file a motion for class certification in the early stages of the case to comply with the Seventh Circuit's decision in *Damasco v. Clearwire Corp.,* 662 F.3d 891, 896 (7th Cir.2011)").  Research has uncovered no instance in which counsel has been chastised for doing so.

Although it is true that in 2003, Fed.R.Civ.P. Rule 23 was amended to make it clear that court approval for a settlement is only needed if a class has been certified, this clarification did not alter the jurisprudence holding that: "The representative plaintiff owes a fiduciary duty to absent members even before the class is certified." In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation  375 B.R. 719, 727  (S.D.N.Y.,2007).  It is thus appropriate for the putative class representative and her counsel, who has retained the putative representative to bring a class action, to take reasonable steps to preserve the class claims. "Prior to certification, class members have no control over who may come forward as a named plaintiff and class counsel, and so their interests at that stage require protection. Requiring court approval (under Rule 23(e)) is one means of ensuring this protection. *Imposing limited fiduciary duties upon pre-certification class counsel is yet another.*" Schick v. Berg, 2004 WL 856298, 6 (S.D.N.Y. 2004). See also *Johnson v. U.S. Bank Nat. Ass'n,*  276 F.R.D. 330, 332 (D.Minn.2011) Accord, *Boles v. Moss Codilis, LLP,*  2011 WL 4345289, 2 (W.D.Tex. 2011).

Lastly, the Court's ruling in *Mayorga* was not raised by either party in the motion for

class certification, making a motion for reconsideration or amendment of order particularly

appropriate.

## CONCLUSION

Plaintiff urges this Court to reconsider and to alter its order regarding appointment of class

counsel by finding the undersigned and co-counsel adequate to represent the class.

Dated: November 4, 2014
      Brooklyn, New York

                               Respectfully submitted,
                                   /s/
                               Ahmad Keshavarz
                               THE LAW OFFICES OF AHMAD KESHAVARZ
                               16 Court St., 26th Floor
                               Brooklyn, NY 11241-1026
                               Phone: (718) 522-7900
                               Fax:    (877) 496-7809 (toll-free)
                               Email: ahmad@NewYorkConsumerAttorney.com


                               NATIONAL CONSUMER LAW CENTER, INC.

                               Charles M. Delbaum, Esq. (admitted pro hac vice)
                               7 Winthrop Square, 4th floor
                               Boston, MA 02110
                               617-542-8010
                               617-542-8028 Fax
                               cdelbaum@nclc.org

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court
using the CM/ECF system which will send notification of such filing to the following:

                    Defendants
                    MIDLAND FUNDING, LLC;
                    MIDLAND CREDIT MANAGEMENT, INC;
                    ENCORE CAPITAL GROUP, INC; and
                    AMANDA PEREZ
                    By and through their attorneys of record
                     Kevin P. Wallace
                     Karen F. Lederer
                    Timothy St. George
                    Troutman & Sanders, LLP

The Chrysler Building
405 Lexington Avenue
New York, NY 10174

Date: <u>November 4, 2014</u>
        Brooklyn, NY
/s/
Ahmad Keshavarz
One of Plaintiff's Attorneys

## <u>TABLE OF CONTENTS</u>

I.    <u>Introduction</u>.................................................................................................................1

II.   <u>Plaintiff's Counsels' Making and Conveying of Initial Settlement Offers was Inadvertently Deficient in One Respect, but the Class was not Harmed by this Error</u> ...................................2

III.  <u>The Class Retainer has been Superceded and the Offending Provision Removed – a change precipitated by defendants' re-tendering the prior individual offer.</u>.........................................7

IV.   <u>Counsel's Action in Filing a Prophylactic Motion for Class Certification Merely Demonstrates that Counsel Takes Seriously his Fiduciary Responsibilities to the Class</u>..........9

# TABLE OF AUTHORITIES

## Cases

*Boles v. Moss Codilis, LLP*, 2011 WL 4345289 (W.D.Tex. 2011) ....................................................

*Byes v. Telecheck Recovery Servs.,*173 F.R.D. 421 (E.D. La .. 1997)..............................................

*Damasco v. Clearwire Corp.,* 662 F.3d 891 (7th Cir.2011)"). ........................................................

*Deadwyler v. Volkswagen of America, Inc.*, 134 F.R.D. 128 (W.D.N.C. 1991) ..............................

*Halecki v. Empire Portfolios, Inc.*, 952 F.Supp.2d 519 (W.D.N.Y. Jul. 9, 2013) ...........................

*In re J.P. Morgan Chase Cash Balance Litigation*, 255 F.R.D. 130 (S.D.N.Y. 2009) ...................

*Johnson v. U.S. Bank Nat. Ass'n,* 276 F.R.D. 330 (D.Minn.2011) ...................................................

*Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) ...........................................................

*Kurgan v. Chiro One Wellness Centers LLC,* 2014 WL 1245053 (N.D.Ill. March 26, 2014) .........

*Millea v. Metro–North R.R. Co.,* 658 F.3d 154 (2d Cir. 2011)..........................................................

*Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110–11 (5th Cir.1978) ...................................................

*Schick v. Berg*, 2004 WL 856298, 6 (S.D.N.Y. 2004)......................................................................

*Weber v. Goodman*, 1998 WL 1807355, at *1 (E.D.N.Y. 1998).......................................................

## Rules

Fed.R.Civ.P. 23............................................................................................................ *passim*

Local Rule 6.3...................................................................................................................